1. A constable has no authority to levy a tax fi. fa. where the principal amount exceeds $100, and a deed made pursuant to such a levy and sale is void.
2. Although void, such a deed is sufficient color of title upon which to base prescription; and since there was evidence which would have authorized the jury to find that the plaintiff had acquired a prescriptive title to the land in dispute, the trial court erred in directing a verdict for the defendant.
3. Under the facts disclosed by the record, the rules of law with reference to coterminous landowners, and prescription by constructive possession as between them, have no application to this case.
4. The special ground of the motion for new trial, complaining of the exclusion of evidence, is without merit.
5. No ruling is made on the question of estoppel, since upon another trial the evidence may be different.
 No. 15663. JANUARY 8, 1947. REHEARING DENIED FEBRUARY 7, 1947.
On January 10, 1946, J. C. McDonald brought an equitable petition against Ernest F. Wimpy, alleging the plaintiff's ownership and possession of "land lot 1131 in the 12th district, 1st section, of originally Cherokee, now Lumpkin, County, Georgia, containing forty acres, more or less." The plaintiff prayed for an injunction against trespass, a decree of title, and for general relief. In his answer the defendant denied the plaintiff's ownership of the property in question, and further averred that the defendant is the owner of the fee-simple title to the property, and that he and his predecessors in title have been in the adverse possession of the property, under a legal chain of title, for more than twenty years. *Page 9 
On the trial of the case, the plaintiff introduced, as a part of his documentary proof, the following: 1. Tax receipts for the years 1934, 1941, 1942, 1944, and 1945. 2. A warranty deed from John H. Moore to the plaintiff, dated August 10, 1932, and recorded on September 12, 1932, conveying "all that tract or parcel of land, lying, situate and being in the Twelfth (12th) District and First (1st) Section, in the County of Lumpkin, State of Georgia, and being lots of land known and distinguished in the plan of said district and section by lot numbers One Thousand One Hundred and Thirty (1130); three acres, more or less, of lot of land number One Thousand One Hundred and Thirty-one (1131); three acres, more or less, of lot of land number One Thousand and One Hundred and Forty-eight (1148); said tract containing forty-five acres, more or less." 3. A tax execution, together with entries, and an accompanying sheriff's deed, conveying to the plaintiff "that certain tract or parcel of land in said County of Lumpkin, State of Georgia, to wit: lot of land Eleven Hundred and Thirty-one (1131) in the 12th District and 1st Section, containing forty acres, more or less." This deed was dated April 7, 1931, and was recorded May 12, 1931.
The defendant introduced in evidence a warranty deed from A. C. Wheeler, E. D. Kenyon, and Mrs. Frank Christian to the defendant, dated December 1, 1944, and recorded October 20, 1945, conveying "the agricultural interest only in land lot No. 1131 in the 12th District and First Section of Lumpkin County, Georgia."
The plaintiff testified in part as follows: "I have a deed to land lot 1131 in the 12th district, 1st Section, of Lumpkin County. . . The visible evidence of my taking charge of this property is well, the first was I drove a house car on it up here from Florida, camping on the property something like six weeks. It was on top of a hill and the other lot was down, and during the time the boys and myself as a hobby set out trees in one corner and trimmed up other trees and began to get it ready, and built later — built a cow pasture up there. And later on I prospected the property and kept people from cutting wood on it. Some people had been on it and cut wood. Mr. Jenkins in his lifetime went on and cut quite a bit of wood, and I went and talked to him. He was under the impression the Standard Gold Mine Company owned it, and I told him, `No, I bought it,' and asked him to stop, which he did. And then *Page 10 
along about `39 or `40 — Mr. C. J. Baker has been living on the place looking after the property, and is living on it now. He is my tenant. I paid the money for the purchase of this property to the clerk of the court, I believe it was — the sheriff or the court clerk, as best I remember the clerk. I have a deed from the sheriff for this property or any portion or interest in it, which I intend to introduce certified copies of. Besides the sheriff, Mr. Moore deeded me a portion of this 1131, contiguous with the property where my cabin was located, touching it. I do not remember how much I paid Mr. Moore. . . I paid approximately $30 for the tax deed. It includes the taxes and cost that accumulate in sheriff's sales, I suppose. Well, in occupying this property I have spent a considerable amount in improvements, mostly in caretaking and watching over it and trying to protect it. One place I stopped some washes going through where the water was washing, and other places somebody had been in and cut some small trees, and I particularly taken care that they had grown back. I have cultivated about an acre of this property, and fenced some of it. Well I built a structure I would call a cow shelter. I had a cow and had a pasture up there. I pastured live stock on the property. These activities, and cultivating, fencing, building structures, have been more or less continuous. The pasture I am sure was. The one I put on there was in `31, and then up until `35 we lived there most of the year. Sometimes we were out two or three months in the winter. I has my children here in school, and we cultivated a garden on the hill and set out a lot of trees, and even when I turned it over to Mr. Weaver, I was going back to Florida. The fence was up, and I understand the fence is up yet. Mr. Baker, I believe, still has the fence. Maybe a part of it has been torn down by Mr. Wimpy. Year by year since I bought it at sheriff's sale and from Mr. Moore, I have kept the taxes paid on this property. Not to my knowledge has there been any gap in my possession of that property or activity with reference to it. I have had it and exercised those rights since I bought it. . . I have been managing that lot and have paid the taxes on it for fourteen years uninterrupted and peaceful except for the interference Mr. Wimpy (the defendant) has given me."
On cross-examination, the plaintiff testified: "I built a house on 1130 while living in this house car in 1930. Well, if I am not *Page 11 
mistaken, it was the following year after I moved in this house I built a fence on a part of lot 1131. I would not say positive it was in 1930. It was at the time though I purchased this lot and went out there to improve them, and it could have been `31, but that has been fourteen or fifteen years ago. I built a wire fence on lot 1131 on what I know as the southwest corner, I guess, well on the northwest corner, I suppose, joining 1130. I believe that would be right. Well, I did that, I would like to put that in `30 or `31. I am sure it was in one of the years. I don't remember how many strands of wire I put around it. I took in enough to hold a cow. Well, I don't remember how much I taken in, possibly three acres of it. I think there is more than an acre. That fence was there in 1936. It was there when I turned it over to Mr. Weaver. That is when I moved back to Florida. I put it there in `30 or `31, and say it was there in 1936. That is not as far as I know about it. It is still there. At the time, five or six years or probably eight years, I was not up here, and Mr. Weaver had it up until about '39 or `40. He was in charge of it. I mean there is still a fence out there that encloses or encircles part of that lot, supposed to be. I was there a year ago. I am positive a year ago when I was up here out at the place the fence was there and encircled and enclosed a portion of that property. As I said, I put a cow shelter on lot 1131. That was not on the part I got from Mr. Moore. That cow shelter was on the part involved here. I am talking about an average cow shelter, I guess. You saw some of them. I did not drive a stake in the ground. As best I remember, there was posts in the ground, planked up, and a roof on it, a composition roof. Well, it was there when I left in `35 or `36. I don't know whether it is there now. I have not been there in a year. There has been a building or cow shelter on lot 1131 in the last fifteen years. Along between `31 it was there. That is as far as I know about it till I left. I don't know how long it stayed after I went back to Florida. . . At the time this shed was on the lot, I saw it last there in 1935. I have had a tenant there since then. I have not had any tenant on lot 1131. He lives on 1130, but he was taking care of lot 1131. I don't know what he did on lot 1131 when I was away but he was supposed to be looking out for things."
There was other evidence offered by both the plaintiff and the defendant, but it is not deemed necessary to quote it. *Page 12 
A verdict was directed for the defendant. The plaintiff filed a motion for a new trial, and by amendment added two special grounds, one complaining of the exclusion of certain evidence, and the other complaining of the direction of a verdict as being contrary to law, because "under the pleadings and the evidence there were issues of fact which should have been submitted to the jury and evidence introduced which would have authorized a jury to find a different verdict from that directed by the court."
The motion for new trial was overruled, and to that judgment the plaintiff excepted.
1. A constable has no authority to levy a tax fi. fa. where the principal amount exceeds $100. Code, § 92-7406. Where such a levy is made, and pursuant thereto a sale is had and a sheriff's deed is executed, the deed is void and ineffectual as a conveyance of title. See Butler v. Davis, 68 Ga. 173; State of Georgia
v. Paschal, 27 Ga. App. 357 (108 S.E. 475).
Since the evidence in this case showed that the sheriff's deed under which the plaintiff claims title was made pursuant to a levy by a constable of a tax fi. fa. exceeding $100 in the principal amount, the plaintiff acquired no legal title by virtue of the deed.
2. Although void and ineffectual as a conveyance of title, the sheriff's deed was sufficient color of title upon which to base prescription. Smith v. Jefferson County, 201 Ga. 674;Willis v. Hudspeth, 145 Ga. 438 (89 S.E. 427). There was evidence tending to show adverse possession of a portion of the land described in the sheriff's deed for a period of more than seven years prior to the defendant's purchase. The jury, under the evidence, would have been authorized to find that the plaintiff, immediately after his purchase, entered upon the described premises, enclosed several acres with a fence, cultivated a part of the land, used a part for pasturing purposes, and built a cow shelter on the land; and that actual adverse possession was maintained for more than seven years. Actual possession of a part of the land would, by construction, extend the possession to the limits of the boundaries described in the sheriff's deed. Accordingly, the evidence would have authorized a finding that the plaintiff had acquired a prescriptive title *Page 13 
to the whole of lot 1131. For these reasons, the court erred in directing a verdict for the defendant.
3. The rules of law with reference to coterminous landowners, and prescription by constructive possession as between them, which are urged by counsel for the defendant in error, have no application to the facts disclosed by the record, for the reason that this case does not involve a disputed boundary line between parties owning adjacent properties, but relates solely to the title to an entire lot of land to which both parties hold deeds.
4. The special ground of the motion for new trial, complaining of the exclusion of evidence, is without merit, it not appearing that the court was apprised of the answer expected to the question propounded on direct examination by counsel for the plaintiff.
5. Evidence not quoted in the foregoing statement of facts was introduced on the question of estoppel, which was pleaded by the plaintiff; but since upon another trial the evidence may be different, no ruling is now made on this question.
Judgment reversed. All the Justices concur.